[No. 1953-2.   Division Two.   December 29, 1976.]

JONATHAN G. SHOTWELL, ET AL, *Appellants*, v. TRANSAMERICA TITLE INSURANCE COMPANY, *Respondent*.

*David Johnson, Richard J. Niichel,* and *Niichel & Rutz, P.S.,* for appellants.

*S. Brooke Taylor,* for respondent.

PETRIE, C.J.—Plaintiffs, Jonathan G. Shotwell and Candace Shotwell, husband and wife, seek to recover damages from defendant title insurance company for breach of the provisions of a title insurance policy. The trial court entered findings of fact and dismissed plaintiffs' complaint. Plaintiffs have appealed to this court.

The trial court's findings of fact are not challenged. Essentially, they provide:

3.

That the Plaintiffs own certain real property located in Clallam County and legally described as follows:

The Northwest Quarter of the Northwest Quarter, Section 34, Government Lot 4, Section 27; Government Lot 1, Section 28; all in Township 31 North, Range 7 West W.M., Except *right of way for existing roads.* Situated in Clallam County, State of Washington.

4.

That on or about July 19, 1974, Defendants entered into a contract with the Plaintiffs whereby the Defendants agreed to insure Plaintiff's title to said real property in the amount of Eighty-Five Thousand Dollars ($85,000.00) against defects and liens or encumbrances on said title, with certain specified exceptions.

5.

That prior to the issuance of said policy of title insurance, the Defendant issued to the Plaintiffs a preliminary commitment for title insurance. That both the preliminary commitment and the title insurance policy itself *listed the following exception* under Schedule B, "defects, liens, encumbrances and other matters against which the company does not insure: . . . 2. *Right of way for existing roads."*

6.

That a Court Decree in *Clallam County v. Robinson,* et al, Clallam County cause No. 9075, quieted title in Clallam County to a forty foot (40′) wide strip of land, which runs through the Plaintiffs' property from the west boundary to the west boundary of the Elwha River for the purposes of a public road.

7.

That at the time of the Plaintiff's purchase of the subject property, and the issuance of the title insurance policy by the Defendant, there was in existence on and across the Plaintiff's property, a road varying in width from 10 to 15 feet generally lying within the said forty foot (40′) wide right of way, a road, the existence of which was obvious and conspicuous which terminated westerly of the Elwha River at least 200 feet.

8.

That at the time of the Plaintiff's purchase of the sub-

ject property, the Plaintiffs were aware of the existence of said road on their property, were also aware of the existence of two (2) gates on or across said road owned by the County of Clallam, and were also aware of the existence of a dike constructed by the County of Clallam and beginning approximately at the terminus of said existing road and located between the terminus of the road and the west bank of the Elwha River.

9.

That the Plaintiff Jonathan G. Shotwell is a man of above average intelligence who is involved in the road construction business and has considerable experience in matters involving real estate, roads, easements and rights of way. At the time of the purchase the Plaintiffs were not aware of the existence of Clallam County Cause No. 9075.

(Italics ours.)

Not included within the trial court's findings, but nevertheless uncontroverted as a fact, is the "General Exceptions" clause which excepts policy coverage for:

Encroachments or questions of location, boundary and area, which an accurate survey may disclose; *public* or private *easements, streets, roads,* alleys or highways, *unless disclosed of record by* recorded Plat or conveyance, or *decree of a Court of record*; rights or claims of persons in possession, or claiming to be in possession, not disclosed by the public records; . . .

(Italics ours.)

Further, the following condition and stipulation is expressly set forth in the policy:

All actions or proceedings against the Company must be based on the provisions of this policy. Any other action or actions or rights of action that the insured may have or may bring against the Company with respect to services rendered in connection with the issuance of this policy, are merged herein and shall be enforceable only under the terms, conditions and limitations of this policy.

We note, initially, that both the title policy and the plaintiffs' deed of conveyance specifically except "right of way for existing roads." Further, when plaintiffs purchased their property there was in existence a road generally lying

within the recorded 40-foot right-of-way, a road which was obvious and conspicuous varying in width from 10 to 15 feet. The judgment which created and defined the 40-foot right-of-way existed of record since 1944.

The defendant told its insured that it would *except* from coverage any public easements, streets, or roads unless disclosed of record by decree of a court of record. It also told its insured that it would except from coverage any "right of way for existing roads."

What, then, could the insured reasonably expect from this defendant? The answer to that question lies in the response to a broader question: What do title insurance applicants expect to obtain? One noted authority has responded:

> Applicants for a title insurance policy are interested in obtaining the insurance coverage, but they are sometimes more interested in what the company examination of title discloses. This is perhaps partly at the base of the prevailing philosophy of title insurance companies— stressing the service of risk delineation rather than risk coverage.

Johnstone, *Title Insurance*, 66 Yale L.J. 492, 494 (1957).

That response, in turn, raises an additional inquiry: What duty, if any, does a title insurer have to conduct a reasonable search and disclose the results of that search to its policy applicant? Within the four corners of the title policy the company appears to declare that it simply "does hereby insure" the policyholder "against loss or damage sustained by reason of" certain specified defects in title; further, that within certain limitations, it will defend the policyholder against claimed demands founded upon defects not excepted.

On the other hand, we know that in this jurisdiction no title company can be authorized to transact business in any county unless it or its agent owns and maintains a complete set of tract indexes for that county. RCW 48.29.020 and .040. Thus, we know that in this jurisdiction title insurance companies operate as so-called "title-plant companies" which conduct their own independent searches.

Indeed, the policy in this case notified the policyholder of some of the defects revealed by the search which was in fact undertaken. Separate charges do not appear on the face of the policy for the conduct of the search and for the risk of exposure under the insuring provisions of the contract. In Washington, then, title insurance characteristically combines search and disclosure with insurance protection in a single operation.

Under those circumstances, a duty to conduct a reasonable search arises by implication from the nature of the insuring contract. *See Dorr v. Massachusetts Title Ins. Co.*, 238 Mass. 490, 131 N.E. 191 (1921); and *Comment, Title Insurance: The Duty to Search*, 71 Yale L.J. 1161 (1962). Furthermore, a policyholder has a reasonable expectation that he will be advised of the specific impediments upon his land as revealed by a reasonable search even though he has or ought to have knowledge of the general nature of that impediment upon his land. *Pruett v. Mississippi Valley Title Ins. Co.*, 271 So. 2d 920 (Miss. 1973).

We hold, therefore, that defendant had a duty to notify the plaintiffs of the specific nature of the 40-foot right-of-way which had been of record since 1944 and which a reasonable search certainly would have revealed.

Judgment reversed, and this cause remanded with direction to ascertain the amount of plaintiffs' damages, if any, by reason of defendant's breach of its duty to notify plaintiffs of the 40-foot right-of-way which transected their property.

REED, J., and JOHNSON, J. Pro Tem., concur.

Petition for rehearing denied January 24, 1977.

Review granted by Supreme Court June 8, 1977.