728 P.2d 666

Kent N. SMITH, individually and as Personal Representative of the Estate of Ross Kent Smith, Jr. and Ross Kent Smith, Sr., Assignees of Eldon B. Lee; Richard D. Lee and Jean R. Lee, his wife; and Superior Construction Corporation, a North Carolina corporation, Plaintiffs/Appellants/Cross-Appellees,

v.

The HOME INDEMNITY COMPANY, a New Hampshire corporation, licensed to do insurance business in the State of Arizona; and the United States Fire Insurance Company, a New York corporation licensed to do insurance business in the State of Arizona, Defendants/Appellees/Cross-Appellants.

No. 2 CA–CIV 5583.

Court of Appeals of Arizona, Division 2, Department B.

June 11, 1986.

Review Denied Nov. 12, 1986.

Stompoly & Even, P.C. by David L. Horley and William G. Walker, Tucson, for plaintiffs/appellants/cross-appellees.

Teilborg, Sanders & Parks by James A. Teilborg, David J. Damron and Gerald T. Hickman, Phoenix, for defendants/appellees/cross-appellants.

1. Appellant has not requested attorney's fees on appeal. Thus, each party shall bear its own attorney's fees.

Bury, Moeller & Humphrey by David C. Bury and Kevin Miniat, Tucson, for appellees.

## OPINION

LIVERMORE, Presiding Judge.

While driving a borrowed motorcycle, Eldon Lee struck and killed Ross Kent Smith, Jr. The decedent's personal representative and his father, residents of Arizona, brought a wrongful death action in Graham County Superior Court; they were awarded judgment in the sum of $1,046,829. However, an agreement not to execute had been consummated between the Lees and Smiths nine days earlier. In exchange for their promise not to collect against the Lees personally, the Smiths received an assignment of rights to three insurance policies: Eldon Lee's personal automobile liability policy, a business auto policy maintained by Eldon's parents, and an umbrella policy also maintained by Mr. and Mrs. Lee. Defendant, Home Indemnity Company, had issued the personal and business policies. The umbrella policy was underwritten by defendant United States Fire Insurance Company.

Neither company was willing to negotiate the claim, contending that the accident was not within the scope of coverage. The Smiths then instituted this suit under their assigned rights, alleging bad faith denial of benefits, negligent failure to settle and strict liability. They sought punitive damages as well as satisfaction of the $1.046 million judgment. Motions for summary judgment were granted in favor of both defendants. The court found that prior to the accident Eldon was removed as a named insured from the business policy; Home Indemnity was not liable under it. Removal from that underlying policy, the court held, vitiated Eldon's right, and the Smiths' assigned rights, to collect on the United States Fire umbrella policy. Finally, it was determined that there could be no recovery under the personal policy because it covered only ownership, maintenance or use of any auto or trailer and as a matter of law, "a motorcycle is not an auto for purposes of liability insurance." The Smiths appeal the judgment except as it pertains to the business policy. We affirm.

## Personal Policy

■ Eldon Lee's insurers promised to: Pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident

and defined "covered person" as:

You [Eldon] ... for the ownership, maintenance or use of any auto or trailer.

We start with the proposition that the personal policy provides coverage if, but only if, a motorcycle is an "auto" within the policy terms. Unfortunately, "auto" is not defined in the policy; we must glean a definition from applicable state law. This, the parties contend, raises a choice of law issue.

This litigation has substantial contacts with North Carolina. That is the place of contracting, the location of the insured chattel at the time of contracting, and, apparently, the permanent domicile of the insured. A motorcycle is unquestionably not an automobile in that state. *Hunter v. Michigan Mutual Liability Co.*, 41 N.C. App. 496, 255 S.E.2d 206 (1979).

On the other hand, Idaho also had significant contacts with the automobile liability policy such that we would be justified in interpreting that policy under Idaho law. The insured was attending college in Idaho, the insurer had knowledge that the risk was principally in that state during much of the term of the policy and the accident occurred in Idaho.

We do not believe a choice necessary because we do not believe Idaho defines automobile differently than does North Carolina. See Restatement (2d), Conflict of Laws, § 186 comment *c* (1971).

In the case of *Miller v. Farmers Insurance Company of Idaho*, 108 Idaho 896, 702 P.2d 1356 (1985), the supreme court of that state used the terms "motorcycle", "automobile", and "motor vehicle" interchangeably, leading one to believe, at first

blush, that a motorcycle is an automobile in Idaho. Miller was injured in a one-vehicle accident while driving his uninsured motorcycle. As he was residing with his parents at the time, Miller claimed against their policies, contending that he was an insured within the context of the policy which defined "insured" as "the named insured or a relative." However, "relative" was defined as "a relative of the named insured who is a resident of the same household, *provided neither such relative nor his spouse owns an automobile.*" (Emphasis added) Because Miller owned the uninsured motorcycle that caused his injury, the court held that "appellant Miller did not qualify as an insured under the policy issued by respondent Farmers Insurance." 702 P.2d at 1360. Impliedly, the court found a motorcycle to be an auto.

We do not believe, however, that the *Miller* case evinces a judicial policy to extend automobile coverage to motorcyclists. To the contrary, that decision required that separate coverage be obtained for a motorcycle. Idaho has recognized there are risks unique to motorcycling. See *State v. Albertson*, 93 Idaho 640, 470 P.2d 300 (1970) (upholding protective helmet legislation). Also, "motorcycle" is separately defined in several chapters of Idaho's motor vehicle statutory title. See, e.g., 49–101(c), 49–538, 49–201(2), (3) (1982 Statutes). The great weight of authority is that the term "automobile" does not include motorcycles. See, i.e., 1C J. Appleman, Insurance Law and Practice § 573 n. 38 (1981). Accordingly, the motorcycle accident was not an "auto" accident and the personal policy did not apply to it.

Appellants also claim the "out of state coverage" provision of Eldon's policy read together with Idaho's Motor Vehicle Safety Responsibility Act extends policy coverage to this incident. That claim was not made in the trial court nor in the opening brief on appeal. Issues raised for the first time in a reply brief will be disregarded by the appellate court. *Clark v. Airesearch Mfg.*, 138 Ariz. 240, 673 P.2d 984 (App.1983). Summary judgment in favor of Home Indemnity was proper.

**Umbrella Policy**

The usual purpose of an umbrella policy is to extend coverage beyond the limits of an underlying insurance policy. 8A J. Appleman, Insurance Law and Practice § 4909.85 (1981). In this case, the underlying policy was the business policy. At the time of the accident, Eldon Lee was not a named insured on that policy nor was he named in the umbrella policy. He was neither residing with nor in the care of his parents. He could not, therefore, claim against the umbrella policy when it only protected:

a) The named insured;

b) Any relative if a resident in the same household as the named insured;

c) Any other person under the age of 21 in the care of the insured;

d) To the extent that underlying insurance provides coverage, to any other person or organization included as an insured in any underlying policy listed in the schedule of underlying insurance attached to this policy.

Appellants' attempt to overcome this defect in their claim by relying upon condition No. 12 of the umbrella policy cannot succeed. Condition No. 12 is titled "Maintenance of Underlying Insurance," and it reads as follows:

The insured agrees that the underlying policies listed in the Schedule of Underlying Insurance or renewals or replacements thereof not more restricted, shall be maintained in force as collectable insurance during the currency of this policy. In the event of failure by the insured to maintain such policies or to meet all conditions subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner as it would have applied had such policies been so maintained in force.

Contrary to appellants' assertion, the purpose of this provision is not to extend coverage to unnamed persons but rather to limit U.S. Fire's coverage to sums in excess of that provided by the underlying policy even if that underlying policy is allowed to

**450**

lapse. *Wommack v. United States Fire Ins. Co.,* 323 F.Supp. 981 (D.Ark.1971). Summary judgment in favor of United States Fire was proper.

In light of the above, we need not decide the cross-appeal of United States Fire concerning the propriety of the trial court's ruling finding personal jurisdiction over it.

The judgment is affirmed. The matter is remanded to the trial for consideration of the request of United States Fire for attorneys' fees.

BIRDSALL and HOWARD, JJ., concur.